IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., CHERI SUTER and MELINDA HARMER, | ) ) ) ) | Case No. CV-03-15-S-BLW |
| Plaintiffs, | ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| NATIONAL REHAB PARTNERS INC. and MAGIC VALLEY REGIONAL MEDICAL CENTER, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant Magic Valley Regional Medical Center's ("MVRMC") Bill of Fees and Costs (Docket No. 85), Plaintiffs' Motion for Leave to File a 30-Page Memorandum of Objections (Docket No. 95), Plaintiffs' Amended Motion for Leave to File a 30-Page Memorandum of Objections (Docket No. 97), and MVRMC's Motion for Leave to Amend the Answer to the CV-03-128-S-BLW Complaint (Docket No. 63).

## BACKGROUND

Several months ago, Plaintiffs sought an extension of time to disclose

**Memorandum Decision and Order - 1**

experts so that they could substitute a new expert to replace Lawrence Nicholson. Plaintiffs argued that they learned for the first time during Nicholson's deposition that he did not possess a Masters Degree as suggested in his CV.  Plaintiffs suggested that they were therefore forced to sever their relationship with Nicholson because Nicholson's inaccurate CV would make him a dishonest witness.

MVRMC opposed the substitution, suggesting that they would be prejudiced if the Court allowed Plaintiffs to substitute another expert witness for Nicholson. The Court agreed that there was potential for prejudice if it granted Plaintiffs' motion.  However, the Court adequately addressed many of those potential prejudices.  Still, the Court agreed that MVRMC had likely incurred significant expenses in responding to Nicholson's opinion, which may be lost on the case should Plaintiffs replace Nicholson.

The Court also agreed with MVRMC's concern that Plaintiffs may use their opportunity to substitute their expert as an opportunity to completely change their expert analysis.  The Court found that it would be prejudicial to allow Plaintiffs to make a drastic change in their expert analysis at this point in the proceedings. However, based on Plaintiffs' assurance that they did not intend to change the expert analysis – they simply intended to change the source of the analysis to a more honest one – the Court found that MVRMC had not shown that they would

**Memorandum Decision and Order - 2**

be substantially prejudiced by allowing Plaintiffs to substitute their expert.  The

Court therefore granted Plaintiffs' motion.  The Court cautioned Plaintiffs,

however, that if they took advantage of the opportunity to substitute their expert by

completely changing their expert analysis, the Court would be open to a motion by

MVRMC.  The Court specifically stated that the remedy to such a motion was

unclear at that time.

Plaintiffs thereafter replaced Nicholson with Ronald Clark as their expert.

After reviewing both Nicholson's and Clark's expert reports, the Court agreed with

MVRMC that Plaintiffs had completely changed their expert analysis.

Accordingly, the Court found that Plaintiffs had violated the Court's Order by

replacing Nicholson with Clark, and that MVRMC had been prejudiced by the

substitution.  After considering several potential remedies to the violation, the

Court concluded that the best remedy was to allow Plaintiffs to choose one of two

options.  The first option would allow Plaintiffs to forego using Clark as their

expert.  The second option would allow Plaintiffs to use Clark as their expert, but

would saddle Plaintiffs with all of MVRMC's expenses associated with Nicholson,

and any additional expenses which were incurred as a result of the change in expert

witnesses.  Under this option, the Court would order Plaintiffs to pay MVRMC for

all such expenses, including, but not limited to, attorney fees and costs related to

**Memorandum Decision and Order - 3**

obtaining its own expert to respond to Nicholson and attorney fees and costs related to reviewing Nicholson's expert report and deposing Nicholson.  To that end, the Court stated that it would order MVRMC to provide the Court and Plaintiffs with a cost bill outlining its expenses.  Plaintiffs would then have an opportunity to object to the amount of expenses, and the Court would ultimately determine the final amount.

In its earlier order, the Court cautioned Plaintiffs that the Court foresaw a relatively large cost bill.  Furthermore, the Court noted that it would require that the expenses be paid before allowing the case to proceed.  Plaintiffs ultimately chose the second option.  MVRMC then submitted its cost bill, and the reasonableness of that cost bill is now before the Court.

## ANALYSIS

### I.      Bill of Costs

The issue before the Court is fundamentally a discovery dispute caused by Plaintiffs' failure to obey the Court's order regarding the substitution of Plaintiffs' expert witness.  Pursuant to Federal Rule of Civil Procedure 37(b)(2), if a party fails to obey such an order, "the court in which the action is pending may make such orders in regard to the failure as are just."  F.R.C.P. 37(b)(2).  As noted above, and as explained in this Court's earlier opinion, this Court has already

Memorandum Decision and Order - 4

determined that the just result is to allow Plaintiffs to use Clark as their expert, but to saddle Plaintiffs with all of MVRMC's expenses associated with Nicholson, and any additional expenses which were incurred.

MVRMC's expenses must be reasonable, however, and their attorney rates must be "comparable with prevailing rates in the community." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1386 (9th Cir. 1988). MVRMC's cost bill requests a total amount of $1,544.022.71, which includes $1,487,183.06 in fees and $56,839.65 in costs. After reviewing the cost bill and related briefs, the Court has determined that some, but not all, of these costs and fees are recoverable. The Court will explain its determination in detail below.

### A.    Attorney Fees

A review of the attorney declarations filed in support of MVRMC's cost bill reveals that MVRMC's attorney fees were broken down into specific categories based on particular tasks. The Court also recognizes that MVRMC's counsel dedicated significant time to responding to Nicholson's expert report because Nicholson provided the initial basis and support for Plaintiffs' assertion that MVRMC was liable for more than $18 million in damages. Thus, MVRMC's comprehensive response to Nicholson's report was reasonable.

Still, Plaintiffs suggest that certain fees should not be awarded for various

**Memorandum Decision and Order - 5**

reasons.  The Court agrees with Plaintiffs to some extent.  The Court will address each of Plaintiffs' concerns below.

### 1.    Hourly Rates

Plaintiffs contend that MVRMC's attorney rates should be reduced to rates charged by attorneys in the Boise area.  The Court must determine a reasonable hourly rate by considering the experience, skill and reputation of the attorneys requesting fees.  *See Schwarz v. Secretary of Health and Human Services*, 73 F.3d 895, 906 (9th Cir. 1995).  "A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community, which typically is the community in which the district court sits." *Id.* (internal quotations and citations omitted).  The relevant community in this case is Boise, Idaho, where this Court sits.

A narrow exception to this rule provides that rates from another community are acceptable where local counsel are unwilling or unable to provide the necessary legal services because they lack the experience, expertise or specialization required to properly handle the matter. *Id.* at 907.  In reliance on this exception, MVRMC contends that the Boise community market does not have attorneys capable of handling litigation involving specialized FCA health care matters such as those at issue in this case.  The Court is not persuaded.

**Memorandum Decision and Order - 6**

The Court does not question the fact that MVRMC's counsel, McDermott Will & Emery LLP ("MWE"), are well qualified to handle this matter.  However, the fact that MWE attorneys are qualified does not, in itself, mean that Boise lacks available qualified attorneys.  Additionally, a review of Hayman's declaration indicates that MWE attorneys spent considerable time reviewing Medicare rules and regulations relevant to the case.  (Hayman Decl., ¶ 18).  The high rates charged by specialized attorneys are typically balanced by the fact that such specialization requires less time researching and reviewing relevant information.  Any specialization attributed to MWE attorneys is undone by the considerable time spent addressing the issues in this matter.

Moreover, MVRMC's suggestion that Plaintiffs have not met their burden of offering evidence of qualified Boise attorneys of comparable expertise improperly shifts the burden to Plaintiffs – it is MVRMC that must show that the exception applies.  In the rare case where the Ninth Circuit has applied this narrow exception, the court relied on numerous declarations of attorneys stating that attorneys and law firms in the relevant community were not available.  *See e.g. Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993).  MVRMC has failed to provide this Court with such evidence.  Accordingly, the Court will reduce MVRMC's attorney rates to Boise community standards.

**Memorandum Decision and Order - 7**

Due to the number of attorneys and legal assistants who have worked on this case on behalf of MVRMC, and the differing experience of each, the Court will not attempt to come up with a reasonable billing rate for each individual attorney and legal assistant.  Instead, the Court will note that it has reviewed Hayman's declaration and the exhibits attached thereto, including the fee bill.  A review of the bill, coupled with a review of Exhibit C to the Declaration of Newal Squyres (comparison of MWE billing rates and Boise attorney rates), reveals that Boise rates are approximately half as much as the rates charged by MWE attorneys and legal assistants with similar experience.

For example, Russell Haymen, a MWE Partner with 25 years of experience, has a 2007 billing rate of $720.00 per hour.  By comparison, Steven Andersen, a Partner at Boise regional firm Holland & Hart ("H&H") with 26 years of experience, has a 2007 billing rate of $325.00 per hour.  Mr. Andersen's billing rate is approximately 45% of Mr. Haymen's billing rate.  Similarly, Jon Dean, a MWE Partner with 11 years of experience, has a 2007 billing rate of $575.00 per hour, while Amanda Brailsford, a Partner at H&H with 14 years of experience, has a 2007 billing rate of $285 per hour.  Ms. Brailsford's billing rate is approximately 50% of Dean's billing rate.  Nicolas Oettinger, a MWE Associate with five years experience, has a 2007 billing rate of $370.00, while Nicole Snyder, a H&H

Associate with 6 years of experience, has a 2007 billing rate of $215.00.  Ms. Snyder's billing rate is approximately 58% of Mr. Oettinger's billing rate.

Accordingly, rather than assigning a specific billing rate to each attorney, the Court will reduce MVRMC's entire attorney fee bill by half.  This will bring the rates to within the Boise community standard.

### 2.    Redundant and Unnecessary Fees

Plaintiffs next contend that MVRMC seeks fees for redundant and unnecessary attorney work.  Plaintiffs contend that MWE billing statements are inadequate, with too many redactions, to allow the Court to ascertain the basis of many of the fees.  The Court disagrees.

Hayman explains in his declaration that MWE provided the Court with as much specific information necessary, without waiving the attorney-client privilege and work product doctrine.  (Hayman Decl., ¶ 4).  Hayman further states that all entries that did not reflect services or costs associated with Nicholson were completely redacted as not relevant to the cost and fee award.  (Hayman Decl., ¶ 5).  Hayman also states that two MWE attorneys intimately familiar with the work performed by MWE on this case reviewed the bills to ensure that they reflect only time associated with Nicholson. (Hayman Decl., ¶ 17).  A review of the billing statements, coupled with Hayman's declaration, is sufficient for the Court

to conclude that the billing statements accurately reflect only time associated with Nicholson.

Plaintiffs next contend that because several attorneys and legal assistants worked on the same tasks, MWE unnecessarily duplicated work, and that MVRMC should not be awarded fees for such duplication.  However, as pointed out by MVRMC, in those instances where several individuals worked on the same tasks, it is clear that only a few individuals did the lion's share of the work.  Other individuals added only a few hours of service here and there.  It certainly is not uncommon for lead attorneys to assign discrete projects to additional attorneys or staff members not otherwise engaged in the matter.  MVRMC therefore should be compensated for this time.

### 3.    Issues Remaining in Case

Plaintiffs contend that MVRMC should not recover fees for time and effort spent dealing with allegations in the Complaint or the opinions of two additional experts.  The Court agrees, but, as discussed above, the Court is satisfied that MVRMC attorneys did not claim fees for time spent addressing other issues in the Complaint.[1]

---

[1] Notwithstanding the Court's determination that MVRMC did not include fees related to issues not associated with Nicholson, as discussed in section A.6. below, with respect to the motion to strike Clark as an expert, MVRMC will not recover fees related to the issue of whether Clark's report is an improper expert report because it is still at issue in this case.

**Memorandum Decision and Order - 10**

### 4.  Fees Related to Motion to Substitute

Plaintiffs argue that MVRMC should not recover fees for time spent addressing the motion to replace Nicholson as an expert.  The Court disagrees.  The motion to substitute is directly related to Nicholson.  Fees related to the motion are therefore warranted by F.R.C.P. 37(b)(2).

### 5.  Fees Related to Bill of Costs

MVRMC seeks an award of $95,313.00 for its preparation of the bill of costs based on 280.3 hours of work by attorneys and legal staff.  Plaintiffs contend that this amount is excessive.  The Court agrees.

As MVRMC points out, Local Rule 54.2 sets forth the list of materials a party must submit with a petition seeking fees, which includes an affidavit of counsel setting forth dates, services rendered, hourly rate, hours expended, a statement of attorney fee contract with client, and information, where appropriate, as to other factors which might assist the Court.  The Court understands that, given the extent of work MVRMC expended toward dealing with Nicholson, some time was needed to prepare the cost bill.  However, MVRMC admits that its "Bill of Fees and Costs went over and above the required submission, containing lengthy declarations, voluminous redacted bills, and an itemization of 27 separate categories of fees and costs."  (MVRMC Reply Brief, pg. 10).  Accordingly, the

Court will cut in half MVRMC's claim for fees related to preparation of the bill of costs.  Thus, MVRMC's fees related to the bill of costs will be reduced from $95,313.00 to $47,656.50.[2]

## 6.    Objections to Categories or Groups of Fees

Plaintiffs make several objections to specific categories of fees.  As discussed above, based on Hayman's declaration and the attached exhibits, the Court has concluded that the billing statements accurately reflect only time associated with Nicholson.  However, the Court does agree with Plaintiffs' objection to certain fees charged for reviewing the Clark report, comparing it to the Nicholson report, preparing the motion to strike the Clark report and its accompanying briefs, reviewing the opposition to the motion to strike, and participating in the hearing on the motion to strike.

When the Court granted Plaintiffs' motion to extend the deadline to allow them to substitute their expert witness, the Court cautioned Plaintiffs not to drastically change the expert analysis or the Court would be open to a motion from MVRMC.  Based on the Court's Order, it was certainly reasonable for MVRMC to review Clark's report and compare it to Nicholson's report.  It was also reasonable

---

[2] Ultimately, this amount will be reduced by half again given the Court's determination to reduce the overall hourly rate of MVRMC's attorneys and legal assistants by half.

**Memorandum Decision and Order - 12**

for MVRMC to file a motion to strike Clark's report.  However, the amount of time MVRMC attorneys spent on the issue – 500.6 hours – is unreasonable.

The Court is intimately familiar with this issue because the Court was required to review the briefs, compare the Clark and Nicholson reports, and issue a decision on the motion to strike.  MWE attorneys claim that it took 54.7 hours to compare the two reports.  It certainly did not take the Court that long.  Granted, the Court had the advantage of reviewing the parties' briefs.  Nevertheless, 54.7 hours is excessive.

Moreover, MVRMC's opening and reply briefs addressed issues unrelated to Nicholson.  Hayman states in his declaration that "MWE attorneys researched and drafted a motion to strike Clark as an expert, based on Plaintiffs' violation of the Court's order."  (Hayman Decl., ¶ 35).  Haymen then states that all of the work associated with the motion to strike was associated with Nicholson "because MVRMC moved to strike Clark only because his opinion was drastically different from Nicholson."  (Hayman Decl., ¶ 35).  In stark contrast to that statement, however, the actual motion to strike stated that "MVRMC moves to strike Plaintiffs' substitute expert's report and preclude him from testifying on the grounds that the report by substitute expert Ronald H. Clark ("Clark"): (1) violates the Court's December 6, 2006 Order prohibiting a 'drastic change' in the 'expert

**Memorandum Decision and Order - 13**

analysis,' *and (2) is improper expert legal opinion*."  (MVRMC's Motion to Strike, pg. 2, Docket No. 70) (emphasis added).  A substantial portion of MVRMC's brief in support of the motion, as well as its reply brief, addressed the second issue – whether Clark's report is improper expert legal opinion.  Whether Clark's report is an improper expert legal opinion is still at issue in this case.  Therefore MVRMC cannot recover fees incurred in addressing that issue.

Because attorneys for MVRMC expended far too much time on the motion to strike, and because the motion to strike addressed whether Clark's report is an improper legal opinion, the Court will reduce the award for this work by 70%.  Thus, MVRMC's fees related to the motion to strike will be reduced from $233,504.75 to $70,051.42.[3]

---

[3]   MVRMC claimed a total of $233,504.75 in fees related to the motion to strike.  70% of that number is $163,453.33.  Subtracting $163,453.33 from $233,504.75 gives a total of $70,051.42.  However, as with the award for fees related to preparing the bill of costs, ultimately, this amount will be reduced by half again given the Court's determination to reduce by half the overall hourly rate of MVRMC's attorneys and legal assistants.

**Memorandum Decision and Order - 14**

### 7.      Attorney Costs

There does not appear to be a dispute over the $10,489.04 in costs requested

by MVRMC.  Accordingly, the Court will award costs in that amount.

### 8.      Final Amount of Attorney Fees and Costs

Based on the foregoing, the Court finds that Plaintiffs must pay MVRMC a

total of $241,725.84 in attorney fees, plus $10,489.04 in costs, for a total award of

$252,214.88.[4]

### B.      Expert Witness Fees

MVRMC retained the services of Georgeann Edford and her consulting firm,

CCS, to provide an expert opinion regarding the Medicare billing issues raised in

this case and to conduct what it claims to be a statistically valid audit to rebut

Nicholson's probe audit.  (Edford Decl., ¶6).  Edford contends that in order to

render the rebuttal opinion, CCS had to develop and conduct a statistically valid

audit of relevant patient records.  (Edford Decl., ¶¶ 8-14.).  Edford claims that she

and her staff spent 5,225.63 hours on work associated with Nicholson. (Edford

Decl., ¶¶ 6-7).  Edford states that if CCS did not have to respond to Nicholson's

---

[4] The attorney fee amount is reached by taking the total amount of attorney fees claimed, $694,561.50, and subtracting $163,453.33 for the reduction based on the excessive fees related to the motion to strike, then subtracting $47,656.50 for excessive fees related to the bill of costs, resulting in a total of $483,451.67.  The Court then cut that number in half based on the Court's decision to reduce the attorney fees by half in order to align them with Boise community standards.

**Memorandum Decision and Order - 15**

report and audit, and if Plaintiffs had retained only Mack and Clark as their experts, it would not have been necessary for CCS to conduct this audit. (Edford Decl., ¶ 20).  Edford claims that all of this time and effort was reasonable and necessary in order to rebut Nicholson's expert opinion in this complex action. (Edford Decl., ¶¶ 23-24).  Finally, Edford states that given her expertise, her hourly rate of $175.00, her professional staff's hourly rate of $140.00, and her administrative staff's rate of $75.00, are usual and customary rates.  (Edford Decl., ¶4).

As with the attorney fee issue, Plaintiffs suggest that certain expert fees should not be awarded for various reasons.  The Court will address Plaintiffs' concerns below.

### 1.    Edford Audit Prepared for Reasons Other Than to Rebut Nicholson

Permeating throughout Plaintiffs' objections to MVRMC's cost bill is Plaintiffs' contention that Edford prepared her audit as a general defense to the allegations in the Complaint, not just a rebuttal to Nicholson.  Plaintiffs suggest that is why Edford routinely refers the "the allegations" in her audit.  The Court finds that this is insufficient evidence to contradict Edford's clear statement that "CCS' regulatory analysis, audit, and opinions were developed and presented in large part to respond to Nicholson as Plaintiffs' damages expert."  (Edford Decl., ¶

**Memorandum Decision and Order - 16**

19).  Edford further states that "[o]nly those time entries that were specifically

associated with Nicholson are included in these calculations."  (Edford Decl., ¶

21).

       However, the Court is somewhat concerned that, because this case has yet to

play itself out with respect to dispositive motions and/or trial, it is difficult to

determine to what extent Edford's work will still be useful in this case.

Accordingly, although the Court finds that, based on Edford's declaration and

billing statements, it seems clear that MVRMC limited its request for expert fees to

those associated with Nicholson, the Court will nevertheless reduce the overall

total by 25%.  Depending on how things play out during the remainder of this case,

it may be that Plaintiffs should recoup some of the fee award, or it may be that

MVRMC may recover the remaining 25%.  The Court may take that issue up post

trial.  At this point, however, the Court feels that, once it makes a determination

below as to the amount of expert fees otherwise recoverable, the Court should

reduce that amount by 25% to compensate for likely use of at least some of

Edford's past work even though she suggests that it was done only for the purpose

of disputing Nicholson's report.

## 2.      Edford's Comparison of the Clark and Nicholson Reports

Plaintiffs contend that Edford claims excessive amounts for her comparison of the Clark and Nicholson reports.  The Court agrees.  In her declaration, under the caption "Review and Analyze the Differences Between the Clark and Nicholson Reports," Edford states that CCS spent 186.92 hours comparing the Clark opinion to the Nicholson opinion.  (Edford Decl., ¶ 30).  Edford also states that she spent 143.50 hours consulting with MWE attorneys in this regard. (Edford Decl., ¶ 30).

As the Court stated earlier, the Court is intimately familiar with the comparison of the Clark and Nicholson reports.  Although the Court finds that it was reasonable for MVRMC attorneys to consult Edford in comparing the two reports, it was not necessary or reasonable for Edford to spend 143.50 hours consulting with the attorneys about the reports.  Nor was it necessary or reasonable for Edford to spend 186.92 hours comparing the reports.  The Court certainly did not take that long to determine that the expert reports were drastically different.  The Court finds that only 10% of Edford's time spent comparing the reports and consulting with the attorneys was reasonable.

Edford claimed $29,144.50 for the 186.92 hours spent comparing the Clark and Nicholson reports.  Edford claimed $27,921.25 for the 143.50 hours spent

consulting with MWE attorneys about the reports.  Thus, in total Edford claimed $57,065.75.  The Court will subtract 90% of that amount, $51,359.18, and award MVRMC 10%, $5,706.57.

### 3.     Expert Costs

As with the expert fees, the Court will also reduce the expert costs by 25%.

### 4.     Final Amount of Expert Fees and Costs

Based on the foregoing, the Court finds that Plaintiffs must pay MVRMC a total of $555,946.79 in expert fees, plus $34,762.96 in costs, for a total award of $590,709.75.[5]

## II.     Motion for Leave to File 30-Page Brief and Motion to File Reply Brief

Plaintiffs seek permission to file a 30-page memorandum of objections to MVRMC's bill of costs.  In response to that motion, MVRMC seeks permission to file a 10-page reply brief.  Considering the amount of fees and costs at issue in this case, the Court will grant both motions.

## III.     Motion for Leave to Amend Answer

MVRMC seeks permission to amend its answer to the Complaint in CV-03-

---

[5] The expert fee amount is reached by taking the total amount of expert fees claimed, $792,621.56 and subtracting $51,359.18 for the excessive fees related to the motion to strike, resulting in a total of $741,262.38.  The Court then multiplied that number by .75 in order to account for the 25% reduction based on the Court's belief that some of Edford's past services may be useful during the remainder of this case.

**Memorandum Decision and Order - 19**

128-S-BLW, the companion case to this case.  Given the delays caused by the

expert witness issue in this case, the Court has determined that it will be necessary

to enter a new scheduling order in this case.  After that order is entered, if

permission is still necessary for MVRMC to amend its answer, the Court will take

up the issue.  Accordingly, at this point the Court will deny the motion without

prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant

MVRMC's Bill of Fees and Costs (Docket No. 85) shall be, and the same is

hereby, GRANTED in part and DENIED in part.  Plaintiff shall pay MVRMC

$252,214.88 in attorney fees and costs, and $590,709.75 in expert fees and costs,

for a grand total of $842,924.63.

IT IS FURTHER ORDERED that the parties shall contact Jeff Severson, the

Law Clerk assigned to this case at (208) 334-9027 on or before **October 25, 2007**,

to discuss the status of the payment of the above referenced award.  Additionally,

at that time, the parties will also discuss setting this case for a scheduling

conference for the purpose of amending the current scheduling order in order to

deal with the delays caused by the expert witness issue.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File a 30-

**Memorandum Decision and Order - 20**

Page Memorandum of Objections (Docket No. 95) shall be, and the same is hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that Plaintiffs' Amended Motion for Leave to File a 30-Page Memorandum of Objections (Docket No. 97) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that MVRMC's Motion to File Reply Brief (Docket No. 98) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that MVRMC's Motion for Leave to Amend the Answer to the CV-03-128-S-BLW Complaint (Docket No. 63) shall be, and the same is hereby DENIED WITHOUT PREJUDICE.  MVRMC may re-file the motion, if necessary, once a new scheduling order is filed in this case.



DATED:  **September 24, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 21**