IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA <u>ex rel.</u>, CHERI SUTER and MELINDA HARMER,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL REHAB PARTNERS INC. and MAGIC VALLEY REGIONAL MEDICAL CENTER,<br><br>Defendants. | Case No. CV-03-015-S-BLW<br>CV-03-128-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Relators' Motion to Exclude Certain Testimony of MVRMC's Expert Witness, Georgeann Edford (Docket No. 182) and Defendant Magic Valley Regional Medical Center's ("Magic Valley") Motion to Exclude Ronald H. Clark's Expert Testimony Pursuant to Federal Rule of Evidence 702 (Docket No. 184). The Court conducted a hearing on the motions on March 8, 2010 and now issues the following decision.

**Memorandum Decision and Order - 1**

## ANALYSIS

As an initial matter, the Court notes that the issues before the Court at this point are limited to whether Relators' expert, Ronald Clark, will be allowed to testify at trial as a damages expert, and whether Magic Valley's expert, Georgeann Edford, will be allowed to testify at trial regarding whether impermissible group therapy occurred at Magic Valley's Transitional Care Unit ("TCU"). In their briefs and at the hearing, the parties spent considerable time addressing related, but distinct, issues concerning the legal standard on damages and Edford's potential testimony on other areas. However, those issues are not before the Court at this time. They will be addressed if and when necessary as we approach trial in this matter.

## I.    Rule 702 Standard

Whether and to what extent Clark and Edford may testify at trial is addressed under the well-known standard first enunciated in *Daubert* and its progeny, but now set forth in Rule 702 of the Federal Rules of Evidence,. Rule 702 establishes several requirements for permitting expert opinion. First, the evidence offered by the expert must assist the trier of fact either to understand the evidence or to determine a fact in issue. *Primiano v. Cook*, --- F.3d ---, 2010 WL 788906, *3 (9th Cir. 2010); Fed. R. Evid. 702. "The requirement that the opinion

testimony assist the trier of fact goes primarily to relevance." *Id*. (Internal quotations and citation omitted).

Additionally, the witness must be sufficiently qualified to render the opinion. *Id*. If specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified by knowledge, skill, experience, training or education may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.,* Inc., 509 U.S. 579, 592-93 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

The inquiry is a flexible one. *Primiano*, 2010 WL 788906, *3 (9th Cir. 2010) Ultimately, a trial court must "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. (Internal quotation and citation omitted).

## II. Motion to Exclude Certain Testimony of Georgeann Edford

Relators contend that Edford did not consider sufficient facts or data, and that her opinion is not the product of reliable principles and methods. With respect to insufficient facts or data, Relators primarily contend that Edford disregarded or

**Memorandum Decision and Order - 3**

ignored the physical therapy daily flow sheets. However, a review of Edford's report and testimony reveals that Edford considered the patients' complete medical records. She considered the daily flow sheets and their context in the complete medical record; she just disagreed with the accuracy of some of the information in the daily flow sheets – specifically, when therapy occurred. (Edford Report, pp. 19-28.) Ultimately, Edford determined that 54.8% of the complete patient records she reviewed contained time conflicts. (Edford Supp. Report, pp. 1-3).

With respect to methodology, Edford bases her opinion upon a statistically valid audit of the physical therapy services provided in the Magic Valley TCU from October 1, 1998 through September 30, 2000. (Edford Report, pp. 17-35.) She indicates that she applied audit procedures outlined in the Medicare Program Integrity Manual and designed the sample using the Office of the Inspector General's Audit Service Statistical Evaluation Program known as RATSTATs. (Edford Report, pp. 1, 17, 22.) She evaluated patient records based on the policies and procedures of safe practice by the American Physical Therapy Association, the Joint Commission on Accreditation of Health care Organizations, the World Health Organization, and the Centers for Disease Control. (Edford Report, pp. 24-25.) Edford also evaluated the provision of therapy services in the TCU by relying upon the Medicare Fiscal Intermediary Manuals for Skilled Nursing Facilities, the

**Memorandum Decision and Order - 4**

Medicare Reimbursement Manual, Transmittals and Program Memoranda published by the Centers for Medicare and Medicare Services, and other regulatory materials. (Edford Report, p. 25.)

Under these circumstances, Edford relied on sufficient facts or data, and her opinion is the product of reliable principles and methods. She is therefore qualified to testify about the general process for assessing therapy patients and assigning them to Resource Utilization Groups, as well as the framework for Medicare reimbursement of skilled nursing facilities.

Relators do not necessarily take issue with this conclusion. Instead, Relators seek to prevent Edford from testifying about whether impermissible group therapy occurred at Magic Valley's TCU during the pertinent dates. In this regard, the Court agrees with Relators. Although Edford attempts to testify that patient outcomes support her contention that there is no evidence that inappropriate therapy minutes were billed, Edford offers no empirical basis for her conclusion. She does not offer any empirical evidence that, notwithstanding the inconsistencies in the times at which patients received therapy, patients received the proper amount of individual versus group physical therapy.

Moreover, even though Edford's methodology included a statistically valid evaluation of each individual patient as to how they progressed at the TCU, Edford

**Memorandum Decision and Order - 5**

is unable to accurately tie that information to the amount of individual versus group therapy. For example, when specifically asked by the Court, Edford testified that there is no way she can tell whether a particular patient received, say 25% as opposed to 27% group therapy, or that a patient's group consisted of five as opposed to four patients. (Transcript, 294: 18-25.) Without empirical data, Edford cannot testify about whether impermissible group therapy actually occurred at Magic Valley's TCU. Accordingly, the Court will grant Relators' motion to the extent it seeks to exclude Edford's testimony that the patients received the proper amount of individual rather than group therapy.

### III.   Motion to Exclude Ronald Clark as Expert Witness

Relators designated Clark as their damages expert. There is no dispute that the standard by which the jury will measure damages in this FCA case is a legal matter. The Court will instruct the jury on that standard as a matter of law. Moreover, both parties acknowledge Ninth Circuit case law stating that "[o]rdinarily the government's damages [under the FCA] would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) (quoting *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966)).

However, Relators argue that determining the actual damages under the FCA is not as straightforward as the standard may suggest. Relators contend that the question of damages is not found in the standard itself, but in the facts to which the standard is applied. Thus, Relators contend that in some cases, such as this case, it is the full amount of the false claim. Relators therefore suggest that Magic Valley is using its motion to strike Clark as a way to seek summary judgment that the Government would have paid at least some amount on the false claims, and to establish the method for determining that amount.

As explained above, although tangentially related, the question about what legal damages standard will apply in this case is not before the Court at this point. Thus, Relators are correct that the Court need not make that determination now. However, the Court agrees with Magic Valley's contention that, notwithstanding the parties' different view of the measure of damages, Clark should not be permitted to testify as an expert because he is either unqualified or unnecessary. Specifically, if Magic Valley is correct on the law regarding the damages standard, Clark is unqualified to testify as an expert; if Relators are correct on the law, Clark is an unnecessary lay witness. Either way, as explained below, Clark is an improper expert witness who will not be allowed to testify.

### A. Clark's Opinion is Unnecessary Lay Testimony

On the one hand, if Relators are correct on the damages standard – that it is the total amount paid by the Government to Magic Valley – Clark is an unnecessary witness. Relators' other expert, Leslie Mack, or potentially even a lay witness, can testify about the total amount paid by the Government to Magic Valley. Mack or a lay witness can easily add up the total payments, or the jury itself can make that calculation. Either way, Clark's testimony would be irrelevant, redundant and cumulative. It will not assist the trier of fact either to understand the evidence or to determine a fact in issue. *Primiano v. Cook*, --- F.3d ---, 2010 WL 788906, *3 (9th Cir. 2010); Fed. R. Evid. 702.

B.   **Clark is Unqualified as a Damages Expert.**

On the other hand, if the proper measure of damages is simply "the amount that [the Government] paid out by reason of the false statements over and above what it would have paid if the claims had been truthful," *Mackby*, 339 F.3d at 1018, Clark is unqualified to testify in this case. Under this circumstance, Clark fails the test set forth in Rule 702.

In his assessment, Clark admits that he reviewed only approximately 12-13 out of approximately 900 patient files to confirm his general opinion that TCU services are fundamentally physical therapy. (Transcript: 51:10-52:24.) Thus, there is a question about whether Clark relied on sufficient facts or data. He does,

however, also rely on deposition records and Leslie Mack's report, and he familiarized himself with FCA books, Medicare regulations, Federal Register notices, and the reports of other experts.

Even assuming Clark relied on sufficient facts or data, his opinion is not the product of reliable principles and methods. *Daubert* and Rule 702 require that a court assess an expert's methodology using criteria such as testability, publication in peer reviewed literature, and general acceptance. *Primiano*, 2010 WL 788906, *3. Here, Clark's methodology is not easily assessable through these typical criteria for determining reliability – that is, his opinion is not the typical scientific opinion to which the typical criteria generally apply. Clark's methodology does not appear in any known peer review or publication, it is not based upon a testable methodology, and there is no general acceptance of his methodology by any professional community. In fact, Clark does not even attempt to suggest otherwise.

However, "the test of reliability is flexible and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id*. Moreover, "the trial court has discretion to decide how to test an expert's reliability as well as wether the testimony is reliable, based on the particular circumstances of the particular case." *Id*.

Here, even under a flexible approach, the Court is unpersuaded that Clark's

**Memorandum Decision and Order - 9**

opinion as the product of reliable principles and methods. Clark's methodology, as explained by Relators, consists of the following: (1) determining there is no legal precedent to determine damages involving the TCU's services; (2) familiarizing himself with the TCU's Medicare services and determining that physical therapy was the central component of the services; (3) reviewing depositions and expert witness reports in this case; (4) reviewing Medicare regulations and Federal Register notices governing requirements for Medicare reimbursement for skilled physical therapy services; (5) researching treatises and articles; and (6) ultimately drawing on his 24 years of experience with the FCA as an attorney at either DOJ or in private practice to opine that the appropriate measure of damages is the entire amount billed. (Docket No. 139, p. 8-9.)

Essentially, as described by Clark himself, his methodology is to simply apply the facts to the law: "I defined in my deposition at pages 40 to 43 what I meant by methodology; that is, facts and then application of the law to the facts. That's what I used – that was the methodology. That's what I've used throughout my career." (Transcript, 36:14-19.) The final, and critical, stage of his methodology is to ask himself, if he were at DOJ supervising this case, what conclusion would he reach as to the measure of damages based on his experience. (Transcript, 37: 7-12.) However, Clark gives no explanation of how his experience

led to his conclusion or how he applied it to the facts of this case.

Notably, Clark does not claim to have expertise in what Medicare would have paid for specific claims if the claims were not false. He claims to have no knowledge of the Medicare Prospective Payment System or Skilled Nursing Facilities other than what he learned in this case. (Clark Report at 6-10.) What he would have done at DOJ is irrelevant to both the disputed legal and factual issues in this case.

Clark's methodology does not represent a recognized methodology for calculating damages in an FCA case, and Clark does not tie his methods to the facts of this case. Clark does nothing more than what the jury will be asked to do in applying the facts of the case to the law. Ultimately, Clark's opinion is nothing more than a legal brief which may be used to persuade the Court to adopt Relators' interpretation of the law regarding the damages standard. If allowed to testify, however, Clark's testimony would only confuse the jury on the proper damages standard. As such, it does not meet the standard under Rule 702 and *Daubert*.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Relators' Motion to Exclude Certain Testimony of MVRMC's Expert Witness, Georgeann Edford (Docket No. 182) shall be, and the same is hereby, GRANTED IN PART. Edford

**Memorandum Decision and Order - 11**

may not testify at trial regarding whether impermissible group therapy occurred at Magic Valley's Transitional Care Unit.

IT IS FURTHER ORDERED that Defendant Magic Valley Regional Medical Center's Motion to Exclude Ronald H. Clark's Expert Testimony Pursuant to Federal Rule of Evidence 702 (Docket No. 184) shall be, and the same is hereby, GRANTED. Clark may not testify at trial.

DATED: **March 23, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge